

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-2007

# USA v. Williams

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4267

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Williams" (2007). *2007 Decisions.* Paper 992.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/992

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4267

UNITED STATES OF AMERICA

v.

DARRYL WILLIAMS,
Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 03-cr-00700)
District Judge:  Honorable Michael M. Baylson

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2007

Before:  RENDELL, JORDAN and ALDISERT, Circuit Judges

(Filed: June 7, 2007 )

OPINION OF THE COURT

RENDELL, *Circuit Judge*.

Darryl Williams was convicted by a jury of two counts of bank robbery in violation

of 18 U.S.C. § 2113(a).  After an initial mistrial due to a hung jury, a new trial yielded a

guilty verdict.  Williams was sentenced to a term of imprisonment of 108 months, 3 years

supervised release, a $1,000 fine, restitution in the amount of $862, and a $200 special assessment. Williams appeals his conviction. He argues that the District Court erred in admitting the testimony of a "reverse projection photogrammetry" expert because the government failed to demonstrate that the expert's technique satisfies any of the admissibility criteria set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or possesses any other indicia of reliability. We have jurisdiction over Williams' appeal pursuant to 28 U.S.C. § 1291 and we will affirm.

## I.

Williams was charged with robbing two banks in June 2003. In the first robbery on June 6, a man entered Sovereign Bank in Folsom, Pennsylvania, demanded money from a teller and ran out after receiving $640. This robbery was captured on the bank's surveillance camera. In the second robbery on June 18, a man who, witnesses say, bore a resemblance to the Sovereign robber, entered a Citizens Bank in Glenolden, Pennsylvania. This man demanded money from the teller station but grabbed $422 from the teller before she could comply.

The primary issue at trial was the height of the bank robber in each of these robberies. Witnesses to the robberies testified that the robber was anywhere from 5'2" to 5'7" tall. Williams is 6' tall. The government sought to introduce the expert testimony of FBI agent Paul Smith concerning the height of the Sovereign Bank robber. Based on the video footage from the surveillance camera, Smith determined that the suspect was closer

2

to 5'11" than 5'2" by applying "reverse projection photogrammetry." This method is on occasion employed by the FBI to determine the height of individuals depicted on surveillance cameras like the one that captured images of the Sovereign Bank robber. Smith testified that there is an error rate of about 1" in this type of height analysis. After holding a *Daubert* hearing to determine the admissibility of this evidence, the District Court determined that Smith's testimony was admissible.

Williams challenges the District Court's admission of Smith's testimony concerning reverse projection photogrammetry on the grounds that the technique fails to satisfy any of the five *Daubert* criteria for admission of expert testimony. The District Court found under the preponderance standard that Smith's testimony met the requirements of Federal Rule of Evidence 702. Specifically, the Court found that the testimony was based on sufficient facts or data as recounted by the expert, the testimony was a product of reliable principals and methods, that the expert had adequate training in the technique and that he has review within the FBI, which, in the trial judge's opinion, was sufficient under the applicable test. Additionally, the District Court found that the witness applied the principals and methods reliably to the facts of the case.

## II.

We review the District Court's decision for abuse of discretion. *United States v. Velasquez*, 64 F.3d 844, 847 (3d Cir. 1995). Although the Supreme Court has made clear that federal trial judges, pursuant to Fed. R. Evid. 702, have a "gatekeeping" obligation to

insure that only reliable and relevant expert testimony be presented to jurors, the trial judge is granted a certain degree of latitude to determine whether the *Daubert* factors or any other set of reasonable reliability criteria are reasonable measures of reliability in a particular case. *Daubert*, 509 U.S. at 593.

Rule 702 sets forth requirements for the admission of expert testimony: (1) the proffered witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Velasquez*, 64 F.3d at 848. The overriding consideration with regard to these three factors is that expert testimony should be admitted if it will assist the trier of fact. *Id.* at 849.

The parties do not dispute that Smith's testimony satisfies the first and third requirements of Rule 702. Here, Smith presented evidence that the FBI trained him in the reverse projection photogrammetry technique and that he has employed the technique on numerous prior occasions. Additionally, it is clear that Smith's testimony is relevant to the primary issue of height in this case and that admission of his testimony would aid the trier of fact in making a determination of height.

The second requirement, that the expert testify to scientific, technical or specialized knowledge, is at issue here. The Supreme Court clarified in *Daubert* that this requirement is intended to ensure the reliability or trustworthiness of the expert's testimony. *See Velasquez*, 64 F.3d at 849 (citing *Daubert*, 509 U.S. at 590). *Daubert* enumerates a number of factors to be considered by a district court in its assessment of

4

whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue. *Daubert*, 509 U.S. at 590. These factors are: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994).

Williams argues that the District Court erred in admitting Smith's testimony because the government failed to proffer evidence demonstrating the reliability of Smith's reverse projection photogrammetery technique as it was used in this case, including evidence that the technique has been published or subjected to peer review, evidence as to the technique's error rate, evidence as to the standards controlling the technique's operation, or evidence that the technique, as used in this case, is accepted by anyone outside of the FBI. We disagree.

The trial judge is granted a certain degree of latitude to determine whether the *Daubert* factors or any other set of reasonable reliability criteria are appropriate measures of reliability in a particular case. *Daubert*, 509 U.S. at 593. All of the *Daubert* factors do not necessarily apply to each case nor are these factors a comprehensive list of all

possible measures of reliability. "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Moreover, depending on the facts of each particular case, the factors do not have to be weighed equally. The factors merely guide the judge's determination of the admissibility of evidence, a determination to which we afford great deference.

Under the liberal *Daubert* standard, the plaintiffs do not have to prove to the judge by a preponderance of the evidence that their expert's testimony is correct, they must only show that it is reliable. The requirement of reliability is lower than the standard of correctness. A judge can find an expert opinion reliable if it is based on "good grounds" or methods and procedures of science rather than on subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 590. The judge does not have to determine that these methods are necessarily the best grounds to ascertain certain facts, but only that the evidence presented will help the trier of fact.

Additionally, the reliability factor is not a strict requirement that should be used to exclude all questionably reliable evidence. "The reliability of evidence goes 'more to the weight than to the admissibility of the evidence.'" *Velasquez*, 64 F.3d at 849 (citing *United States v. Jakobetz*, 955 F.2d 786, 800 (2d Cir. 1992)). In order to be admissible, evidence need only be sufficiently reliable to help the trier of fact. *In re Paoli R.R.*, 35 F.3d at 744.

Here, the government proffered a detailed explanation of the technique of reverse projection photogrammetery. Smith testified about the methodology used in the technique and detailed how the methods were applied in this case. He also testified that he has published articles about the technique and that it is employed by the FBI and by a few other law enforcement agencies.

We conclude that the District Court did not abuse its discretion in determining, based on this evidence, that the reverse projection photogrammetry technique is sufficiently reliable to satisfy the admission requirements of Rule 702. Because Smith's evidence spoke to the paramount concern in the case – the height of the robber – and because the District Court found Smith's technique to be sufficiently reliable, the District Court did not abuse its discretion in admitting Smith's testimony.

Once the foundation for admissibility required by *Daubert* has been established, concerns about the validity of an expert's conclusions should not result in the exclusion of the expert's testimony. Rather, such concerns should be presented to the jury through cross examination, presentation of contrary evidence and careful instruction on the burden of proof. *Rock v. Arkansas*, 483 U.S. 44, 61 (1987).

### III.

For the reasons set forth above, we will affirm Williams' conviction.